# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Criminal Case No. 12-cr-00345-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

PHILLIP CHADWICK,

    Defendant.

---

# ORDER

---

This matter is before the Court on Defendant Phillip Chadwick's Motion for New Trial (Doc. # 69), Motion for New Trial—Newly Discovered Evidence (Doc. # 77), and Motion for Order re Witness Testimony (Doc. # 100). For the following reasons, Defendant's motions are denied.

## I. BACKGROUND

Defendant was indicted on August 20, 2012, by a grand jury for knowingly selling or otherwise disposing of a firearm to a convicted felon, when he knew or had reasonable cause to believe that such a person is a convicted felon under 18 U.S.C. § 922(d)(1). (Doc. # 1.) At trial, the jury heard testimony from a confidential informant (CI) that Defendant sold him a firearm even though the CI told Defendant several times that he was a felon. The jury also viewed a video of the transaction between Defendant and the CI. Defendant also testified, and stated that he did not hear the CI say that he

was a felon. After a four-day jury trial that commenced on March 11, 2013, Defendant was convicted by the jury.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A motion for a new trial is not regarded with favor and is only [granted] with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (internal quotation omitted).

The Court may grant a motion for a new trial on any circumstance that might have resulted in the miscarriage of justice, including trial errors. *United States v. Ramos-Carrillo*, No. 09-cr-00056, 2012 WL 71755, at *2 (D. Colo. Jan. 10, 2012) (unpublished). However, "a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984). Thus, an "alleged error by the trial court constitutes grounds for granting a new trial only where the trial court concludes that, absent the alleged error, a jury would likely have reached a contrary result." *Richins v. Deere & Co.*, 231 F.R.D. 623, 625 (D.N.M. 2004).

## III. DISCUSSION

Defendant contends that he is entitled to a new trial on the basis of (1) jury instructions, (2) juror misconduct, and (3) newly discovered evidence. The Court will address each of Defendant's contentions in turn.

## A. THEORY OF DEFENSE INSTRUCTION

Defendant first contends that the Court erred in refusing to tender his theory of defense instruction to the jury. Defendant submitted five such instructions, each of which varied slightly. Essentially, the Defendant asked that the Court instruct the jury that because of his hearing or the CI's speech, Defendant did not know or have reason to believe that the CI was a felon when Defendant sold him the handgun.

A defendant is entitled to jury instructions on his theory of defense if it is supported by sufficient evidence. *United States v. Davis,* 953 F.2d 1482, 1492 (10th Cir. 1992). "Such an instruction is not required, however, if it would simply give the jury a clearer understanding of the issues." *United States v. Williams*, 403 F.3d 1188, 1195 (10th Cir. 2005) (internal citations and quotations omitted). Furthermore, a theory of defense instruction is " 'required only if, without the instruction, the district court's instructions were erroneous or inadequate.' " *Id.* (quoting *United States v. Wolny*, 133 F.3d 758, 765 (10th Cir. 1998)). The instructions must adequately instruct the jury on the legal principles underlying the defense; it is not enough to present the defense in wholly factual terms. *United States v. Migliaccio*, 34 F.3d 1517, 1523 (10th Cir. 1994).

Before trial, the parties submitted their proposed and stipulated jury instructions to the Court, and after reviewing those instructions, the Court sent the parties its proposed instructions. At this point, Defendant had submitted several versions of his theory of the case instructions. In its communication with the parties, the Court provided the proposed omitted instructions with a detailed explanation for not including any version of Defendant's theory of the case instructions. That communication stated:

> Defendant Chadwick has submitted two versions of his "theory of the defense" instruction. Essentially, Defendant Chadwick requests that the Court instruct the jury of his arguments as to why he did not know [the CI] was a convicted felon. As support for his argument, Defendant relies on *United States v. Scafe*, 822 F.2d 928, 932 (10th Cir. 1987), which stated that "[a] defendant is entitled to jury instructions on any theory of defense finding support in the evidence and the law. Failure to instruct is reversible error."
>
> However, the Tenth Circuit later criticized this statement in *Scafe* as "dicta" and clarified that "a 'theory of the defense' instruction is not required if it would simply give the jury a clearer understanding of the issues." *United States v. Wolny*, 133 F.3d 758, 765-66 (10th Cir. 1998). Rather "a 'theory of the defense' instruction is required only if, without the instruction, the . . . instructions were erroneous or inadequate." *United States v. Bowling*, 619 F.3d 1175, 1183 (10th Cir. 2010).
>
> As the Government correctly argues, the instruction on the elements of the charged offense sets out the requirement that Defendant was required to know or have reasonable cause to believe that the confidential informant was prohibited from possessing a firearm. Further, the Court has included the parties' stipulated instruction that defines the term "knowingly." Thus, the jury will already be instructed that Defendant must have known that the CI was prohibited from possessing a firearm.
>
> Defendant's proposed "theory of the case" instruction sets forth arguments for why Defendant did not have reason to believe that the CI was a convicted felon. The Tenth Circuit has "rejected attempts to require instructions that are essentially summaries of the evidence in the light most favorable to the defense, summaries that are more appropriate for closing argument." *Wolny*, 133 F.3d at 766. Defendant Chadwick's proposed instruction is such a summary. Thus, the Court is inclined to find that a theory of the case instruction is not appropriate and should not be included as a jury instruction.

(Doc. # 62-2.)

On the fourth day of trial, the Court held a charging conference to allow the parties to make arguments as to the proposed and omitted instructions. Defendant

again submitted a theory of the case instruction. The Court again denied Defendant's request for the reasons set forth in the prior communication to the parties.

The following instructions were included in the final jury instructions, which the Court read and gave to the jury before deliberations:

**INSTRUCTION NO. 13**
**UNLAWFUL SALE OR DISPOSITION OF FIREARM**
**18 U.S.C. § 922(d)**

Defendant Chadwick is charged in Count 1 with a violation of 18 U.S.C. § 922(d).

This law makes it a crime for a person knowingly to sell or otherwise dispose of a firearm to a convicted felon, when the seller or transferor knows or has reasonable cause to believe that such a person is a convicted felon.

To find Defendant Chadwick guilty of this crime you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

<u>First</u>: Defendant Chadwick knowingly sold or otherwise disposed of a firearm to [CI];
<u>Second</u>: at the time of the sale or disposition [CI] was a convicted felon; and
<u>Third</u>: at the time of sale or disposition, Defendant Chadwick knew or had reasonable cause to believe that [CI] was a convicted felon.

The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

"Reasonable cause to believe" that someone is a convicted felon means knowing facts that would cause a reasonable person to conclude that the other person is a convicted felon.

A "convicted felon" is someone who has been convicted of a felony – a crime punishable by imprisonment for a term exceeding one year.

5

## INSTRUCTION NO. 14
## KNOWINGLY—DELIBERATE IGNORANCE

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of Defendant Chadwick cannot be established merely by demonstrating that he was negligent, careless, or foolish, knowledge can be inferred if Defendant Chadwick deliberately blinded himself to the existence of a fact.

Knowledge can be inferred if Defendant Chadwick was aware of a high probability of the existence of [CI]'s felony conviction, unless the defendant did not actually believe [CI] had previously been convicted of a felony.

(Doc. # 64.)

In the instant motion, Defendant advances arguments previously raised with, and rejected by this Court. The Court again rejects such arguments for the reasons given in its communication with the parties. None of Defendant's arguments persuade the Court that it erred—let alone that it erred to such an extent that a miscarriage of justice occurred. Accordingly, "the interest of justice" does not require the Court to grant a new trial. *See* Fed. R. Crim. P. 33(a).

**B.   JUROR MISCONDUCT**

1.   <u>Whether the Jury Impermissibly Adopted Counsel's Arguments for Evidence</u>

Defendant next argues that the jury, as evidenced by a question they sent to the Court during deliberations, "improperly adopted and ratified as evidence the [Government's] closing argument," which undermined Defendant's right to a fair trial. The question read:

> Can the US [Government] prove, further that there was no truck/trailer/vehicle (i.e. distraction) that the Defendant claimed to have seen during the CI statements of 'I am a felon three times'[?]

A "verdict must be based upon the evidence developed at the trial." *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana,* 379 U.S. 466, 472-73 (1965).

Here, as the Government correctly points out, the jury viewed a videotape of Defendant selling a firearm to the CI, during which the CI stated:

> You know, every time I go to buy a [expletive] gun, I always smile, you know, because I remember the [expletive] prosecutor. That last one, with that .45. He tells me, he says, 'You know you are a **felon**, right?' Yeah. You know you are not supposed to own guns, right? And I just smile. I go in front of the judge, he sits down, and he looks down at me and first thing comes out of his mouth, 'You know you're a **felon**, right?' What the [expletive]? Is that the question of the day? I said, 'Yes, your Honor.' You know you're not supposed to own any guns, right? I just kind of smiled. And I thought about it. I said, 'What the [expletive] is this? Why does everybody keep reminding me that I'm a [expletive] **felon**. Like I don't [expletive] know.' You know what I mean.

In this soliloquy, the CI refers to himself as a felon three times. Therefore, the Court cannot say that the juror's question was not supported by evidence developed at trial or that the question somehow indicates that the jury disregarded the evidence and impermissibly adopted the Government's closing argument as evidence.

*United States v. Humphrey*, upon which Defendant relies, does not change this result. 208 F.3d 1190 (10th Cir. 2000). In that case, the Tenth Circuit reversed a

7

district court that improperly constrained investigation into whether a juror introduced extraneous information into deliberations by making a disparaging remark about the defendant's reputation to other jurors. 208 F.3d at 1201. Unlike in *Humphrey*, in the instant case, the jurors' question reflects the trial evidence, not extraneous information. Therefore, a new trial on this basis is not warranted. *See id.*

      2.      <u>Whether a Juror Inaccurately Responded to a *Voir Dire* Question</u>

Defendant next argues that Juror No. 3 did not disclose that she had professional contacts with Defendant prior to trial. Thus, Defendant argues, Juror No. 3 failed to respond honestly in *voir dire* regarding whether she knew Defendant.

"Under the Sixth Amendment to the U.S. Constitution, an accused has a right to trial by an impartial jury." *United States v. Cerrato-Reyes,* 176 F.3d 1253, 1259 (10th Cir. 1999). "Though no trial can be perfect, . . . '[o]ne touchstone of a fair trial is an impartial trier of fact—a jury capable and willing to decide the case solely on the evidence before it.' " *Id.* (quoting *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554 (1984)). As the Supreme Court has indicated, "[v]oir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power,* 464 U.S. at 554. Thus, "[t]he necessity of truthful answers . . . is obvious." *Id.*

The Supreme Court has articulated a two-prong test to be applied to determine whether a defendant is entitled to a new trial in the face of allegations that a juror's *voir dire* responses were untruthful. To obtain a new trial, the party "must first demonstrate that [the] juror failed to answer honestly a material question on *voir dire*." *Id.* at 556;

8

*United States v. Apperson*, 153 F. App'x 507, 510 (10th Cir. 2005); *see Cerrato-Reyes,* 176 F.3d at 1259 (emphasizing that this part of the *McDonough Power* test "is directed at intentionally incorrect," rather than mistaken, responses). Additionally, the answer must have been in response to a material question. *See Gonzales v. Thomas*, 99 F.3d 978, 984 (10th Cir. 1996) (applying the *McDonough* test in a criminal case). Second, they must "show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power*, 464 U.S. at 556.[1] As the Supreme Court emphasized in *McDonough Power,* "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.* A district court has the discretion to decide whether an evidentiary hearing on these issues is necessary. *Apperson*, 153 F. App'x at 510; *Humphrey*, 208 F.3d at 1198.

Here, Defendant has not met his burden on either prong. As evidence of Juror No. 3's alleged dishonest answer, Defendant provides two reports from CT scans that

---

[1] Before the *McDonough* test was adopted by the Supreme Court, litigants alleging juror impartiality had the opportunity to prove actual or implied bias on the part of a juror after a verdict was entered. *See, e.g., Williams v. United States,* 418 F.2d 372, 377 (10th Cir. 1969). Inability to satisfy the *McDonough* test does not always preclude a litigant from presenting evidence of a juror's actual or implied bias. *See Gonzales,* 99 F.3d at 985-86 ("Cases such as this one—based on allegations of dishonest *voir dire* answers—fall within a larger category that comprises all cases of alleged juror partiality, whatever the source of partiality."). *McDonough* merely provides a party who alleges juror dishonesty during *voir dire* with an additional vehicle to obtain a new trial by demonstrating juror bias. The advent of the test did not eliminate a litigant's broader historic right to prove actual or implied juror bias. *See id.* However, here, Defendant makes no argument that Juror No. 3 was biased against him. Moreover, performing a CT scan on Defendant does not demonstrate implied bias because it "offers no indication that the juror had a personal connection to the parties or circumstances of the trial, or that there were similarities between the personal experiences of the juror and the issues being litigated." *See Brooks*, 569 F.3d at 1289 (defendant did not meet burden where he alleged that he visited juror's home several times in a six year period more than a year before trial).

Juror No. 3 administered as a CAT scan technician. However, these reports do not show that Juror No. 3 interacted with Defendant in any way or otherwise knew Defendant and therefore failed to provide an honest answer in *voir dire*. Indeed, the exams were conducted in March 2010 and December 2011, respectively three years and fifteen months prior to Defendant's trial. The Court conducted an extensive *voir dire*, during which Juror No. 3 never indicated that she recalled meeting Defendant. The Court also gave Defendant an opportunity to conduct *voir dire* and at no time did Defendant, who was in a position to know whether he had interacted with Juror No. 3, question her further about whether she remembered him.[2] *See United States v. Brooks*, 569 F.3d 1284, 1288 (10th Cir. 2009) (no hearing necessary where defendant claimed a juror knew him before trial and that he was in her house a number of times where he did not recognize her and there was no evidence she recognized him); *cf. United States v. Meacham*, 567 F?3d 1184, 1188 (10th Cir. 2009) ("Absent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court."). Therefore, Defendant has not met his burden in demonstrating that Juror No. 3 provided an intentionally incorrect answer to a question during *voir dire*. *See Cerrato-Reyes,* 176 F.3d at 1259 (emphasizing that this part of the *McDonough Power* test "is directed at intentionally incorrect," rather than mistaken, responses); *Gonzales*, 99 F.3d at 984 (the first prong is not satisfied by showing that a juror provided a mistaken, though honest answer).

---

[2] Curiously, Defendant did not raise this issue until after the jury returned a verdict, yet apparently obtained these records only three days subsequent to being found guilty.

Furthermore, even if the Court assumes that Defendant can demonstrate that Juror No. 3 provided an intentionally incorrect answer, he has not met his burden at the second prong. Whether Juror No. 3 performed a CT scan on Defendant would not have justified a challenge for cause. *See generally Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 515-16 (10th Cir. 1998) (discussing and applying the second prong of the McDonough test); *Apperson*, 153 F. App'x at 510 (no hearing required where a defendant did not meet the second *McDonough* prong). Federal courts have required a showing of partiality by a prospective juror before a challenge for cause will be sustained. *Swain v. Alabama,* 380 U.S. 202, 220 (1965). Here, a fleeting professional relationship would hardly be sufficient to justify a challenge for cause. Therefore, because Defendant did not prove either of the *McDonough* prongs, the Court declines to hold an evidentiary hearing on this basis.

**C.  NEWLY DISCOVERED EVIDENCE**

Defendant contends that he should receive a new trial based on newly discovered evidence. (Doc. # 88.) This evidence concerns allegations that the CI made two unauthorized purchases of firearms and other weapons. These allegations were made by a gun dealer in a related case during a proffer with the Government, which took place after the dealer pleaded guilty to selling firearms to the CI. According to Defendant, these purchases were made in addition to the purchases the dealer pleaded guilty to and without the knowledge or consent of Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) agents.

To prevail in a motion for new trial based on newly discovered evidence, a defendant must prove that:

> (1) the evidence was discovered after trial, (2) the failure to learn of the evidence was not caused by his own lack of diligence, (3) the new evidence is not merely impeaching, (4) the new evidence is material to the principal issues involved, and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

*United States v. Redcorn,* 528 F.3d 727, 743 (10th Cir.2008) (citation omitted). Failure to establish any one of the five prongs will result in the denial of Defendant's motion. *See United States v. LaVallee*, 439 F.3d 670, 700 (10th Cir. 2006) ("Because we agree that Mr. Schultz failed to exercise due diligence in discovering the evidence before trial, we need not address whether Mr. Castillo's testimony is merely impeaching or whether there is a reasonable probability that it would result in an acquittal.")

Defendant contends that he deserves a new trial because evidence of the CI's unauthorized firearm purchases constitutes "newly discovered evidence" under Rule 33. It is newly discovered, he argues, because the dealer did not inform the Government of these additional purchases until March 21, 2013 and the Government did not disclose the information to Defendant until April 23, 2013. Defendant argues that this evidence would have allowed him to impeach the CI and ATF agents who testified at trial, and that the evidence "would undercut the integrity of the prosecution's case." (Doc. # 89 at 3.)

In addition to its contention that Defendant did not meet his burden in establishing the five requirements for a new trial, the Government contends that the dealer's allegations that the CI made unauthorized purchases are false. However, the

Court need not address the veracity of the dealer and instead will assume his statements are true for the purpose of deciding Defendant's motion.

After evaluating the five prerequisites, the Court finds that Defendant's argument must fail.

1. <u>Was the Evidence Discovered After Trial?</u>

The Government makes no argument as the first prong. The jury returned a verdict of guilty in Defendant's trial on March 15, 2013. The dealer did not inform the Government of the CI's alleged additional purchases until March 21, 2013 and the Government did not disclose the information to Defendant until April 23, 2013. Therefore, Defendant meets this prerequisite.

2. <u>Was the Failure to Learn of the Evidence Caused by Defendant's Own Lack of Diligence?</u>

Second, a real question exists as to whether Defendant's failure to learn of the evidence was because of his lack of due diligence. Due diligence does not require that a defendant exercise the highest degree of diligence possible to locate evidence prior to trial; only "reasonable diligence" is required. *United States v. Allen,* 554 F.2d 398, 403 (10th Cir.1977). This requirement prevents defendants from keeping "an evidentiary trump card in the event of a conviction." *United States v. LaVallee*, 439 F.3d 670, 701 (10th Cir. 2006) (quoting *Quintanilla,* 193 F.3d 1139, 1147 (10th Cir. 1999). With regard to this prong, Defendant states only that he "could not and did not learn of the evidence until after the trial because it was not available until after the trial." While it is true that the information obtained during the dealer's proffer was uniquely within the

Government's purview, Defendant alleges no facts that he exercised reasonable diligence in interviewing either the CI or the dealer.  *See id.* (defendant did not exercise reasonable diligence when he failed to interview the victim prior to trial).  In this sense, Defendant shifts his burden to the Government.  Thus, the Court cannot say that Defendant met his burden on the second prong.

      3.      <u>Is the New Evidence Merely Impeaching Evidence?</u>

Third, the Government argues this evidence is merely impeaching evidence. Indeed, Defendant's submissions to this Court wholly fail to establish that this evidence would be used for any other reason and instead concedes that the primary purpose of the evidence would be to impeach the CI and ATF agents that testified at trial.  (*See* Doc. # 69 at 3.)  To the extent Defendant argues, "the evidence would undercut the integrity of the prosecution's case which relied on the preposition that [the] ATF had conducted its investigation with rigorous oversight and monitoring of CI-192" (*id.*), this, again, shows that the evidence is for impeachment purposes.  *See United States v. Sinclair,* 109 F.3d 1527, 1532 (10th Cir.1997) (evidence that calls into doubt the credibility of a witness is impeachment evidence).  Because it is merely impeaching evidence, Defendant does not satisfy this prerequisite.

      4.      <u>Is the New Evidence Material to the Principal Issues Involved?</u>

Fourth, even assuming the authenticity and admissibility of these allegations, this evidence would not satisfy this prerequisite for receiving new trial.  Defendant argues that evidence that the CI engaged in unauthorized firearm purchases would be material to a principal issue involved in the trial, *i.e.*, whether ATF agents were honest when they

testified that there was not a truck in Defendant's driveway during the sale, which distracted Defendant and caused him not to hear the CI say he is a felon.  Putting aside that this argument again shows the evidence is admissible only for impeachment purposes, this evidence is too tangential to be material to this principal issue.  Therefore, Defendant has not met his burden as to this prong.

     5.    <u>Is the New Evidence of Such a Nature that in a New Trial it Would Probably Produce an Acquittal?</u>

Finally, the new evidence is not of such a nature that it would probably produce an acquittal.  Defendant argues that this evidence would "probably result in an acquittal because, as demonstrated by the jury notes, the jury was struggling with several issues which are connected to the integrity of the ATF investigation and the Government's case."  That may be true, but given the other evidence of Defendant's guilt, in particular, the video tape discussed *supra*, evidence that the CI allegedly engaged in other unrelated purchases cannot be said to "probably" produce an acquittal.  Thus, Defendant has not carried his burden in demonstrating that he is entitled to a new trial based on this newly discovered evidence.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant is not entitled to a new trial.  Accordingly, it is

ORDERED that Defendant's Motion for New Trial (Doc. # 69) is DENIED.

FURTHER ORDERED that Defendant's Motion for New Trial—Newly Discovered Evidence (Doc. # 77) is DENIED.  It is

FURTHER ORDERED that Defendant's Motion for Order re Witness Testimony (Doc. # 100) is DENIED AS MOOT.

DATED: June 17, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge